*831 OPINION.
Love:
By reason of the fact that petitioner, at the hearing of this case, abandoned its second assignment of error, relative to amount of *832 invested capital, we have left only one issue, viz, the proper amount of depletion to be allowed petitioner for the year 1919. Petitioner claimed depletion in the amount of $2,981.95.
The Commissioner refused to allow any depletion at all. At the hearing, counsel for respondent conceded that depletion should be allowed in the amount of $198.38.
As between petitioner’s claims and the amount conceded by the respondent, the difference arises by reason of the fact that petitioner claims a value of assets conveyed to it at date of incorporation of $300,000, xvhile the respondent contends that $20,000, the par value of the capital stock issued for such assets, is the basis upon which depletion should be taken.
Depletion is recognized as one of the means by which “exhaustion, wear, and tear of property” is permitted to be allowed as a deduction under section 234 (a) (7) of. the Revenue Act of 1918. Depreciation or depletion is permitted for the purpose of enabling the taxpayer to recoup, during the useful life of the asset, its cost to the taxpayer.
Using such cost as a basis, and dividing it by the number of units by which its exhaustion, wear, or tear is measured, gives the rate. In the case of buildings, machinery and such l.ike, a unit of time is used. In the case of coal mines the unit is tons, and in the case of gravel, it may be cubic yards, as in the instant case. In the instant case the owner of the asset, and the person entitled to the deduction for depletion, is the corporation, the Romayor Gravel Co. There is no dispute over the number of cubic yards of gravel in place in the pit. The only controversy is in regard to cost. It is exddent that the cost of the assets to the corporation was the fair market value of its stock issued in payment therefor. The total amount of stock issued was $20,000 par value. If the fair market value of that stock was less than par, then the assets cost petitioner less than $20,000 regardless of the potential value of those assets. And if the fair market value of the stock was greater than par, then the cost of the assets to petitioner was in excess of $20,000.
As there were no-sales, or offers of sale of stock, we are forced to look to and analyze the circumstances and conditions and determine, if we may, what amount of stock might have been issued with a reasonable business-like prospect of selling any substantial amount of same at par to one or more conservative, prudent business men who were put in possession of all the facts affecting the value of such stock.
It seems evident that petitioner purchased a valuable asset. It will be noted that in its first yéar’s operation, 1916, its production was over 72,000 cubic yards. During the World War and the depressed period immediately following, production was very much lower. In *833 1921, and the three following years, production increased with each succeeding year.
The capacity of the pit permitted production to the extent of 300,000 yards per annum, for 20 years, provided a demand for that amount existed. The demand increased after 1920. With full knowledge of all the facts in his possession, and in view of prospects for demand for that gravel in the future, what value would a conservative business man have placed on those assets for capitalization purposes, to have justified such a business man paying par for the stock.
We believe that $50,000 was the maximum limit of such valuar tion. In order to produce profits sufficient to pay an 8 per cent dividend on that capitalization at a net royalty of 3 cents per yard (same-being the net royalty received from the railroad company) an annual production of at least 134,000 yards was necessary, an amount in excess of production for any of the first 9 years of operation.
We have not lost sight of the fact that war conditions materially affected that as well as most other lines of business; neither are we unmindful of the fact that the railroad company was not its only available customer.
Under all the facts of this case we" believe and so hold, that the fair market value of the stock exchanged for those assets was $50,000 and that petitioner is entitled to a rate of depletion on gravel mined of .0083 cents per cubic yard.

Judgment will be entered on 15 days’ notice, wnder Rule 50.